IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 13, 2010 Session

## STATE OF TENNESSEE V. TERRY JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-01531      Lee V. Coffee, Judge**

**No. W2009-01253-CCA-R3-CD  -  Filed September 12, 2011**

Following a jury trial Defendant, Terry Johnson, was convicted of aggravated robbery of a Family Dollar Store in Memphis. The offense involved the theft of merchandise from the store. The trial court sentenced Defendant to serve twenty years in the Tennessee Department of Correction. In this appeal, relying upon *State v. Owens*, 20 S.W.3d 634 (Tenn. 2000) and *State v. Swift*, 308 S.W.3d 827 (Tenn. 2010), Defendant asserts that the evidence is legally insufficient to support his conviction for aggravated robbery. Defendant also argues that the trial court erred by overruling his objection to testimony concerning another theft related offense by Defendant of the same store, also involving merchandise, which occurred about two weeks prior to the offense in the case *sub judice*. After a thorough analysis, we distinguish *Owens* and *Swift*. We also conclude that the admission into evidence of the prior theft related offense was not error. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender; Barry W. Kuhn, Assistant Public Defender; Trent Hall, Assistant Public Defender; and Tim Albers, Assistant Public Defender, for the appellant, Terry Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General, William L. Gibbons, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Facts**

Alice Cummings testified that she was the store manager of the Family Dollar Store on Shelby Drive in Memphis on October 12, 2007. At the 8:00 p.m. closing time on that date, Ms. Cummings was working at a cash register near the entrance to the store. Laquasha Newsom, a new employee of the store, was near the front door putting merchandise up and letting customers, who were inside at closing time, out the locked door.

Ms. Cummings testified concerning an incident involving Defendant which had occurred at the store about two weeks before October 12, 2007. She said that on that prior occasion Defendant, who had been one of several people frequently shoplifting at the store for several months, left the store with an unidentified man, and both men were carrying black plastic bags of merchandise, and none of the items in the bags had been paid for. Ms. Cummings followed Defendant and the other man outside the store. She asked the men to put down the merchandise. Defendant threw "a hunk of concrete" at Ms. Cummings and hit her on the shoulder. The concrete bounced off her and struck and broke the store's door. She reported this incident to police and she was told to call 9-1-1 if she ever saw Defendant enter the store again. She did not know Defendant's name at the time.

Ms. Cummings saw Defendant enter the store at closing time on October 12, 2007. She promptly told Defendant that she was going to call the police. Unfazed by the warning, Defendant continued walking on a path toward the back of the store where Ms. Cummings saw him get a case of bleach and then some children's clothes. Defendant carried these items directly to the front door where Ms. Newsom was standing in Defendant's way and the door was locked. Ms. Cummings had told Ms. Newsom that she was calling the police and instructed Ms. Newsom to not let Defendant out of the store.

Ms. Cummings saw Defendant approach Ms. Newsom at the front door, put the items of merchandise on the floor and reach into his back pocket. She then saw Ms. Newsom place her hands into the air. As a result of what she saw, Ms. Cummings told Ms. Newsom to allow Defendant to exit through the door. Defendant picked up the items on the floor and walked out the door and left the premises. One of the customers in the line for the cash register being operated by Ms. Cummings told Ms. Cummings Defendant's name.

Laquasha Newsom testified that on October 12, 2007, she was employed by and working at the Family Dollar Store on Sheby Drive in Memphis. She stated that what had been a normal day, changed at closing time at 8:00 p.m. She was standing at the locked door allowing customers who were inside at closing time to get out while at the same time

preventing other potential customers from entering the store after closing time. Ms. Newsom recognized Defendant from her neighborhood (though she did not know his name) and noticed him standing outside of the door "like I guess like a regular customer." Defendant "barged in" to the store when Ms. Newsom unlocked the door to allow customers who were inside the store to get outside. Ms. Newsom testified that Defendant proceeded to the back of the store, got a box of Clorox and some children's clothes, and then came to the front door that was being blocked by Ms. Newsom.

Defendant told Ms. Newsom twice to move. When Ms. Newsom did not comply, Defendant placed the merchandise on the floor and then reached into his back pocket and held up a knife with only the blade displayed. Ms. Newsom moved away from the door out of the way of Defendant, who turned a knob unlocking the door, picked up the merchandise from the floor, and exited the store with the merchandise. She testified the knife handled by Defendant was pointed at her mid-section. A customer in the store at the time of the incident gave Ms. Newsom Defendant's name.

Linda Stinson testified that she was a customer in line at Ms. Cummings' cash register at the time of the incident. She saw Defendant in the store and recognized him because Defendant's sister had been married to Ms. Stinson's cousin. She observed Defendant go toward the door where Ms. Newsom was standing. Defendant had a box and clothing in his hands. Defendant told Ms. Newsom to move two or three times with an angry tone in his voice. Ms. Stinson observed Defendant reach behind his back and she saw a knife when Defendant lifted up his jacket. Ms. Stinson observed Ms. Newsom move out of the way and then she saw Defendant leave the store with the box and the clothes. She remained at the store until the police came and gave the police Defendant's name.

Memphis Police Department officer Steven Grimsby testified that he was on duty on the night of October 12, 2007, and went to the Family Dollar Store to investigate the incident involving Defendant in this case. He met with Ms. Cummings, Ms. Newsom, and Ms. Stinson, and from them obtained Defendant's name and the area where he resided. He did not check for the availability of video surveillance because "[w]e knew who the suspect was, no need."

Officer Grimsby admitted on cross-examination that he had with him at the scene "one of these hand held devices where [one] can enter the name that was given to you and show a photo[graph]." Officer Grimsby entered Defendant's name, his mug shot was displayed, and the witnesses at the scene identified Defendant.

Sergeant Kevin Lundy of the Memphis Police Department testified that in October 2007, while employed as a Memphis Police Officer, he was assigned to a federal task force

known as the Safe Streets Task Force. Sergeant Lundy stated that the task force was designed to investigate business robberies, car jackings and bank robberies. He was the lead investigator of the incident involving Defendant at the Family Dollar Store on October 12, 2007. He did not obtain any of the available video surveillance because one of the employees "said she could identify the individual responsible." He also testified that he obtained an identification that included a full name from a witness who was "a family member" of the Defendant. Sergeant Lundy prepared photograph lineups from which Defendant was identified by the witnesses. Sergeant Lundy also interviewed Defendant as a part of his investigation. After waiving his rights, Defendant gave a statement to Sergeant Lundy, who testified at trial that "[Defendant] advised that he does shoplift at the Family Dollar a lot, but he did not pull a weapon."

## II. Analysis

### A. Sufficiency of the Evidence

In his first issue, Defendant challenges the legal sufficiency of the evidence to support his conviction of aggravated robbery. Relying on *State v. Owens*, 20 S.W.3d 634 (Tenn. 2000) in his brief, and upon *State v. Swift*, 308 S.W.3d 827 (Tenn. 2010) submitted after briefing as supplemental authority, Defendant argues that the proof shows his theft of the merchandise was completed before any assault was committed by him with a knife. Therefore, Defendant asserts, since the use of violence "must precede or be concomitant or contemporaneous with the taking to constitute robbery," *Owens*, 20 S.W.3d at 636, he cannot be guilty of any degree of robbery.

The State counters in its brief that *Owens* and *Swift* have significantly different facts from the case *sub judice* which distinguishes the holdings in those cases. Furthermore, the State relies upon the unpublished opinion of this Court in *State v. Mario Merritt*, No. W2003-02868-CCA-R3-CD, 2004 WL 2726030 (Tenn. Crim. App. Nov. 30, 2004), *perm. app. denied* (Tenn. Feb. 28, 2005). In *Merritt*, which has remarkably similar facts as the case *sub judice* regarding the theft aspect of a robbery offense, this Court affirmed the especially aggravated robbery conviction of the defendant who was in the process of shoplifting merchandise and had advanced past the cash registers of the store, but had not yet exited the store when the violence aspect of robbery occurred – the defendant shot one of the store's loss prevention employees. As noted from the citation, *Merritt* was filed about five years after *Owens*; this Court distinguish *Owens* on the facts. *Swift* was filed about five years after *Merritt*.

We begin our analysis of this issue by examining what our Supreme Court has said is **not** a robbery offense in the context of theft by "shoplifting." In *Owens*, the defendant was convicted of robbery based upon facts summarized by the Supreme Court as follows:

> An employee of Dollar General Store saw Owens take an article of clothing from the store without paying. She alerted A.C. Simmons, the Dollar General Store security guard, and Derrick Mims, a store supervisor. Both Simmons and Mims gave chase on foot. They chased Owens for about a block. At this point, Simmons returned to the store to get his car, Mims continued the pursuit on foot. After several blocks, Owens stopped, dropped the article of clothing, turned towards Mims, and brandished a box cutter. Owens then walked away, leaving the clothing where it lay. Simmons, who had retrieved his car, returned to the pursuit and apprehended Owens.

*Owens*, 20 S.W.3d at 637.

> The Court in *Owens* succinctly stated the issue on appeal as follows:

> We accepted review, therefore, to determine the temporal relationship between the taking and the use of violence (fear) as they together constitute the offense of robbery as defined in Tenn. Code Ann. § 39-13-401.

*Id*. at 636.

After a very thorough analysis, the Supreme Court held, "that the use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery under Tenn. Code Ann. § 39-13-401." *Id.* at 641.

Examining the facts of the case, in light of the proper rule of law, the Supreme Court concluded that the violence or fear caused by the defendant was subsequent to the defendant taking the property and was temporally remote. *Id*.

In *Swift*, the Supreme Court stated the issue on appeal and its holding as follows:

> We granted appeal in this case to clarify whether the location of the use of violence or fear is relevant in distinguishing theft from robbery. We hold that the temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor.

*Swift*, 308 S.W.3d at 828.

In *Swift*, the evidence was that the defendant committed theft inside a Best Buy store in Memphis by surreptitiously removing two PlayStation video games from their boxes and placing them into his pants pocket. As he walked toward the exit, the defendant was confronted inside the store by two store employees who were aware, in the words of one employee, that the defendant had "just stole two games." *Id*. 308 S.W.3d at 829. When the store employees tried to restrain the defendant, he swung at both employees. The employees noticed that the defendant had a knife in his hand, and fearing for their safety, they both backed away. The defendant then left the store. *Id.* The jury convicted the defendant of two counts of aggravated robbery. Pursuant to an agreement by the defendant and the state, the trial court reduced one of the convictions for aggravated robbery to aggravated assault. The defendant appealed only the other conviction for aggravated robbery. This Court affirmed, and the supreme court reversed and modified that aggravated robbery conviction to aggravated assault.

In reaching its ruling, the supreme court in *Swift* addressed the State's assertions regarding the inapplicability of *Owens*. The Court held:

> The State argues that this case is distinguishable from *Owens* because Mr. Swift's use of violence and fear occurred inside rather than outside the store. We disagree. Our analysis in *Owens* requires us to ascertain whether there is evidence sufficient to elevate theft to robbery without regard to the location of the use of violence or fear. The temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor.
>
> To assess the temporal proximity between the taking and the use of violence or fear, we must ascertain when the taking was complete. The State maintains that the taking was not complete until Mr. Swift attempted to exit the store without paying for the games because Best Buy consents to its customers holding merchandise while they are in the store. Nothing in the record suggests, however, that Mr. Swift had Best Buy's consent to remove the games from their cases and conceal them in his pants. To the contrary, Mr. Czyrnik told Mr. Odom to watch Mr. Swift because he had just stolen two games, and Mr. Czyrnik testified that he and Mr. Odom waited to approach Mr. Swift in an effort to minimize commotion in accordance with Best Buy's policy. We therefore conclude that the taking was complete when Mr. Swift removed the games from their cases and concealed them in his pants, evincing his intent to deprive Best Buy of the property.

*Swift*, 308 S.W.3d at 831 (citation omitted).

Applying the facts in *Swift* to the law, the supreme court concluded that the defendant in *Swift* did not commit acts of violence or fear, swinging his knife at the store's employees, until "several minutes *after* the taking was complete." *Id*.

As noted above, the State relies upon this Court's opinion in *State v. Merritt*, which was filed after *Owens*, but before *Swift*. In *Merritt*, the defendant's conviction for especially aggravated robbery was affirmed, and the defendant's Tennessee Rule of Appellate Procedure 11 application to appeal to the supreme court was denied. In *Merritt*, a loss prevention security employee of a Goldsmith's Department Store in Memphis, while monitoring the store from a control panel, observed the defendant "take several items of clothing, walk past the cash register, and proceed toward the north doors." *Merritt* at *1. The defendant attracted the attention of the store employee because the defendant and two colleagues who had just entered the store with him began taking clothes without checking the sizes or prices. The store employee, Mr. Harden, confronted the defendant inside the store. The defendant pulled out a pistol and told Mr. Harden to get back and to get on the ground. Mr. Harden stepped aside to allow the defendant to leave the store. Instead, the defendant ran to Mr. Harden pointing the gun at Mr. Harden's face. They struggled for the gun momentarily, and then the defendant began backing out of the store while holding both the gun and the merchandise. Another loss prevention employee, Mr. Sparks, held the doors to prevent the defendant from leaving. At this point the defendant shot Mr. Sparks in the shoulder. The defendant then ran outside the store and fled in a vehicle. *Id*.

The defendant argued on appeal, relying upon *Owens*, that the evidence was insufficient to support his conviction for especially aggravated robbery. This court in *Merritt* summarized the defendant's argument as follows:

> Next, the appellant argues that his actions constituted theft, not robbery. . . . The appellant contends that at the time he took the clothing and proceeded past the checkout counter, the theft had already occurred. He argues that he used force only when Harden and Sparks attempted to prevent his escape. According to the appellant, "[e]vidence that the threat or violence is used to retain property already unforcibly taken, or used to escape, is not sufficient to sustain a conviction for robbery."

*Merritt*, at *4.

Our court reviewed the facts of *Owens* and rejected the defendant's argument, distinguishing *Owens* as set forth:

-7-

*Owens* is clearly distinguishable from the instance case in which the violence was contemporaneous with the taking of the clothing. In the instant case, the appellant was intercepted by Harden after he walked past a cash register and attempted to exit the store without paying for the merchandise. Upon being confronted, the appellant pulled out a pistol and pointed it in Harden's face, ordering him to get on the ground. Thereafter, when Sparks attempted to prevent the appellant from leaving the store, the appellant shot him in the shoulder. The appellant then ran from the store and fled in a car. This issue is without merit.

*Id*.

We agree with the State in this case *sub judice* that the facts in this case regarding the theft aspect are much more similar to the facts in *Merritt* rather than the facts in *Owens* and *Swift*. In *Owens*, the defendant had taken the merchandise outside the store and had been chased approximately five blocks before any act of violence or fear occurred. In the case *sub judice*, Defendant brandished his knife inside the store in order to get past an employee who was blocking his access to exit the store through the door. In *Merritt*, the defendant shot the employee who was blocking his exit from the store. In *Swift*, the stolen merchandise had been concealed from view inside the defendant's pants before he moved to exit the store and swung a knife at two employees trying to detain him inside the store. In the case *sub judice*, Defendant openly carried the merchandise past the cash register to the door before brandishing a knife at the employee so that he could leave the store with the merchandise.

However, *Swift* mandates that we must determine when the "taking" of the merchandise was complete in order to assess the temporal proximity between the taking of the merchandise and the use of violence. *Swift*, 308 S.W.3d at 831. In *Owens*, although not specifically addressed, the taking was obviously complete no later than when the defendant exited the store with the merchandise. In *Swift*, our supreme court concluded that the "taking" was completed when the defendant removed the PlayStation games from their cases and concealed the games in his pants. *Swift*, 308 S.W.3d at 831. Again, although not specifically addressed, the implicit conclusion in *Merritt* is that the taking of the non-concealed, openly possessed merchandise was not complete at the time that the defendant brandished his gun after the defendant "walked past a cash register and attempted to exit the store without paying for the merchandise." *Merritt*, at *4.

Upon our determination of the sole relevant factor, that is, the temporal proximity of the taking and the violence in this case, we conclude that the violence committed by Defendant was concomitant or contemporaneous with the taking of the merchandise. *See Owens*, 20 S.W.3d at 636. The evidence was sufficient to sustain the conviction of aggravated robbery. Defendant is not entitled to relief on this issue.

-8-

## B. Evidence of Another Crime

Defendant argues that the trial court committed reversible error when it allowed into evidence, over Defendant's timely objections, evidence that Defendant had shoplifted items from the same store two weeks prior to the incident which was the subject of this trial, and that Defendant had thrown at and hit Ms. Cummings with a piece of concrete when she tried to stop him outside during that prior shoplifting incident. Defendant filed, pre-trial, a motion *in limine* requesting the trial court to enter an order prohibiting the prosecutor for the State and any witnesses called by the State, during the trial, from making any reference "that another case is pending against the Defendant involving the same Family Dollar Store." Defendant stated the case number of the other charge and alleged that introduction of evidence of the other incident during the jury trial "would not be probative on any issue at trial herein and would, in fact, be highly prejudicial to him."

The trial court conducted a hearing on the motion *in limine* prior to the start of the trial. Alice Cummings, the manager of the Family Dollar Store, was the only witness who testified. She testified that beginning in the Spring of 2007, and continuing until October of the same year, Defendant came into the store and shopifted merchandise once or twice each week. Notably, Ms. Cummings was not questioned on direct or cross-examination as to how Defendant was able to successfully avoid arrest on so many shoplifting incidents prior to the incident on the case *sub judice*.

Ms. Cummings specifically testified about a single incident in September 2007, approximately two weeks prior to the October 12, 2007 incident which is the subject of this appeal. That September, 2007 incident is the occurrence which was the conduct addressed in Defendant's motion *in limine*. According to Ms. Cummings, she observed Defendant with another man in the store on that September day and they were carrying out big black bags of merchandise without paying for the items. Ms. Cummings followed the men outside. She stated that when she got outside the store, Defendant "threw a hunk of concrete, [it] hit me in the shoulder and bounced off my shoulder and hit my door, broke the door." After this September incident, the police told Ms. Cummings to call them whenever Defendant came into the store again, and that was why she called the police as soon as Defendant came into the store on October 12, 2007.

In the trial court, the State argued that proof of the September incident was admissible during the trial of the October 12, 2007 incident to prove the identity of Defendant as the perpetrator; to explain why Ms. Cummings called the police on October 12, 2007 before Defendant even tried to take any merchandise; to explain why Ms. Cummings had Ms. Newsom move away from the door because she knew of Defendant's prior violence; and because the proof was evidence of Defendant's motive and intent. Defendant argued in the

trial court that the evidence was being offered solely, and improperly, as "propensity evidence."

The trial court denied Defendant's motion *in limine* and ruled that evidence of the September 2007 "concrete throwing" shoplifting incident was admissible to prove identity of Defendant, to prove fear by Ms. Cummings and Ms. Newsom, to show the "complete story" why Ms. Cummings called 9-1-1 as soon as Defendant came into the store on October 12, 2007, to prove a "common scheme or plan" by Defendant, to show Defendant's intent to commit aggravated robbery, and to prove Defendant's guilty knowledge.

The trial court did rule that neither the State's prosecutor nor any of the witnesses could mention that Defendant had been indicted regarding the September 2007 incident.

Tennessee Rule of Evidence 404(b) provides that evidence of other crimes or acts, although not admissible to prove the character of a person in order to show action in conformity with the character trait, may be admissible for other purposes. Prior to allowing such proof, the trial court should conduct a jury-out hearing, determine whether there is a material issue other than conduct conforming with the character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); *State v. West*, 844 S.W.2d 144, 149 (Tenn. 1992).

Generally, this rule is one of exclusion, but there are exceptions. *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). The generally recognized exceptions to the rule allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common scheme or plan. *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980). Our standard of review of the trial court's determinations under Rule 404(b) is whether the trial court's ruling was an abuse of discretion. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Identity of Defendant as the perpetrator was not a contested issue such that the prior bad act was admissible for that reason. Two eye witnesses to the crime, including the named victim of the aggravated robbery, clearly could identify Defendant from knowing of him prior to commission of the crime. In addition the police declined to even look at film from surveillance cameras which recorded the crime in progress because identity was not an issue.

However, the evidence was relevant to prove Defendant's intent when he "barged" into the store right at closing time, and openly took possession of merchandise and by-passed the cash register on his way to the front door. It was also admissible as contextual background evidence to explain why Ms. Cummings called 9-1-1 before Defendant had even taken possession of any merchandise. We do not see how the evidence of the prior act proves a motive for Defendant to commit the later offense on October 12, 2007, except that

-10-

Defendant may have believed he could "get away with the crime again," which in essence is inadmissible propensity evidence. Finally, it stretches logic for us to conclude the prior bad act evidence proves the reason Ms. Cummings told Ms. Newsom to get away from the door and allow Defendant to exit the store. Indeed, despite knowing very well Defendant's capability for violence toward a person trying to impede his exit during a shoplifting incident, Ms. Cummings *still* told Ms. Newsom, who was a brand new employee, to stand at the door and not allow Defendant to leave. Only after she saw Defendant reach behind his back and Ms. Newsom's hands go up did Ms. Cummings tell her to move out of the way. However, despite the fact that some of the reasons given by the trial court in its ruling were in error, the evidence was admissible for the other reasons stated. Error, if any, was therefore harmless. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review we affirm the judgment of the trial court .

_____
THOMAS T. WOODALL, JUDGE