**Darrell TEAGUE, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

May 23, 1975.

Certiorari Denied by Supreme Court
Sept. 2, 1975.

Marvin P. Morton, Jr., Paris (appointed), for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, W. R. Kinton, Jr., Dist. Atty. Gen., Trenton, for defendant-in-error.

## OPINION

OLIVER, Judge.

Teague, a member of the Negro race, was tried in the Circuit Court of Henry County upon a two-count indictment. The first count charged that on an unspecified day of September 1972 he "unlawfully and feloniously did possess for the purpose of manufacture, delivery, sale, and in fact did sell Controlled Substance, Listed in Schedule VI of the Controlled Substances Act, being Marihuana, in violation of Section 52-1432, Tennessee Code Annotated." The second count charged that on the same date he "did unlawfully and feloniously possess marihuana in violation of the Statutes."

The trial judge charged the jury that if they did not find the defendant guilty under the first count they should return a not guilty verdict as to that count, and added "You will then look to the proof to determine if the defendant, Darrell Teague, is guilty of the lessor [sic] offense in Count No. 2."

 The Bill of Exceptions shows the jury found the defendant guilty of selling marijuana or possession of it for the purpose of sale under the first count of the indictment and fixed his maximum punishment at imprisonment in the penitentiary for three years. For the conviction announced by the jury, the trial judge pronounced judgment sentencing the defendant to not less than one nor more than three years in the penitentiary. (TCA §§ 52-1422(1); 52-1432(a)(1)(F). Nevertheless, the trial court's Minutes recording the defendant's trial recite incorrectly that the jury found him guilty under both counts of the indictment. In case of such a conflict, the law is settled that the recital in the Bill of Exceptions is controlling. *Headrick v. State,* 519 S.W.2d 403 (Tenn.Cr.App.1974) and cases therein cited. Extraordinary care should be exercised, by everyone responsible for preparation and authentication of the court's Minutes, to see to it that they are absolutely accurate.

In passing, to avoid the possibility of future misunderstanding, we consider it appropriate to clarify further confusion apparent in the trial court's Minutes. The defendant's new trial motion was filed on 5 June 1973. More than a year later, on 11 June 1974 the court entered an order, *nunc pro tunc for 13 May 1974,* which overruled the defendant's new trial motion and purported to correct (reason not stated) its order entered *on 18 September 1973* overruling the same motion. The Bill of Exceptions recites that the court overruled the new trial motion on 20 September 1973 and granted his prayer for an appeal and allowed him 30 days to perfect an appeal and an additional 60 days to prepare and file his Bill of Exceptions. The technical record contains the defendant's prayer for an appeal filed 9 October 1973, but no order of the court granting it. But the Minutes of 1 October 1973 reflect an order of the court granting the defendant an additional 60 days for filing his Bill of Exceptions. So, again, we have inexplicable conflicts between the Bill of Exceptions and the trial court's Minutes. However, since the defendant's new trial motion was overruled either on the 18th or 20th of September 1973, and whether the 60-day extension for filing the Bill of Exceptions was granted at the same time (as stated in the Bill of Exceptions) or on 1 October 1973 as shown in the Minutes, plainly its signing by the trial judge on December 1, 1973 and its filing with the trial court clerk on December 14, 1973 were within the statutory maximum of 90 days from the overruling of the new trial motion. TCA § 27 111.

▪ So, upon consideration of the entire record we conclude that the defendant prayed for and was granted an appeal by the trial court, both of which are necessary prerequisites to vest this Court with jurisdiction, *Green v. State,* 512 S.W.2d 641 (Tenn.Cr.App.1974) and cases therein cited; and that he has succeeded in bringing his case to this Court by an appeal in the nature of a writ of error.

We first address the Assignment that the evidence preponderates against the jury verdict and in favor of the defendant's innocence. The jury obviously accepted the prosecution evidence which, in summary, shows that on the night of 16 September 1972 or in the early morning hours of the 17th Tennessee Bureau of Criminal Identification undercover agent Jerry London bought a one-ounce bag of marijuana from the defendant for $20 in Paris, Henry County, Tennessee. The defendant interposed the defense of alibi, testifying that he went to Nashville to school on 5 September 1972 and did not return to Henry County until September 28th or 29th; that the evening of 16 September 1972 he attended his sister's and brother-in-law's anniversary party in Nashville which lasted until 3:00 or 4:00 o'clock in the morning of the 17th. The defendant's sister and a friend of his testified he was at the party, and his grandparents, living in the Springville Community in Henry County, said they received a collect telephone call from him and his sister the night in question. The anniversary date was the 19th of September.

▪ The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses testifying in support of that defense and of the weight to be given their testimony. *Green v. State,* supra, and cases therein cited. By its verdict, the jury rejected the defendant's defense of alibi, and from a careful review of all the evidence we are of the opinion that it does not preponderate against the decision of the jury upon that question. The evidence amply sustains the verdict of the jury.

▪ We turn now to the defendant's three remaining Assignments of Error by which he presents and urges us to accept his insistence that (1) members of the black race and (2) women were systematically excluded from the venire from which the grand jury which indicted him and the trial jury were selected, and (3) that the trial judge has systematically excluded members

of the black race and women in selecting the Henry County grand jury foreman since 1937, all of which he claims deprived him of his constitutional right of due process and equal protection of law under the Fourteenth Amendment.

In a pleading styled a plea in abatement filed in the trial court prior to trial, the defendant raised objections to the indicting grand jury and the indictment upon those grounds, but made no complaint with reference to the trial jury. Although that document fell far short of the rigid requirements for a plea in abatement, evidently the trial court considered it as such in an evidentiary hearing before the trial, and overruled the plea. The separate transcript of that hearing is not authenticated by the trial judge, but at the trial he permitted that record to be admitted upon defense counsel's motion. So we consider it.

The so-called plea in abatement was filed on 9 March 1973. The technical record also contains a pleading entitled "objection to grand jury and sheriff's venire" filed by the defendant on 5 March 1973, which was the day upon which the grand jury for the January 1973 Term returned the indictment against him. In that pleading the defendant simply objected "to the composition of the Sheriff's Venire and Henry County Grand Jury as they are presently composed," asserting that his state and federal constitutional rights were violated because "The Grand Jury and Sheriff's Venire from which it was drawn contain a disproportionate number of" (1) blacks, (2) women, (3) low-income persons and (4) no 18, 19 or 20-year-old persons and very few young citizens; and also stated as a further basis of objection that the grand jury foreman had served in that capacity between 35 and 40 years.

It is apparent that both of the defendant's pleadings complaining about the composition of the grand jury and the grand jury foreman were encompassed in the pretrial evidentiary hearing referred to. It is also apparent that at this hearing identical pleas filed in several other pending criminal cases, including "9295 which is *Tennessee vs. Dexter Williams,*" were also presented to the court.

In asking the court to take judicial notice of the number of white and black people and the percentage of each in the Henry County population reflected by the census figures of 1960 and 1970, defense counsel stated that he was quoting those figures from his motion to quash "in the (Edna) *Stubblefield* case," which will be referred to later. At defense counsel's request the court also took judicial notice of the 1970 census reflecting the number of persons in the county between 18 and 20 years of age, as well as the number of men and women 18 years of age and older.

It was stipulated that, as shown also in the *Stubblefield* case, the grand jury foreman had served continuously since 1937 and was then more than 80 years of age.

Defense counsel introduced a collective exhibit consisting of 34 photocopies of the court's Minutes showing the names of people drawn by the Jury Commission and summoned by the sheriff to serve as jurors at every term from July 1961 to January 1973, inclusive, except the May 1972 Term for which a like copy of the venire list issued by the clerk to the sheriff was filed. On each of those Minute copies, up to and including the January 1972 Term of the court, a typed label is stapled stating the total number of jurors listed and whether any blacks are included and if so the number and their names. The defendant called a Negro man as a witness, who gave his address as Route 2, Paris, Tennessee (Henry County), whose age is not indicated, who testified he had examined the 35 documents included in the collective exhibit and had counted the number of white men and women and black men and women on each of the 35 lists (notwithstanding that no racial designation appears after any name on any of those juror lists). He testified that the total number of jurors on those 35 lists was 2577, of which there were only 68 blacks including three black women, and

that only 29 women in all were included. How that witness could make that determination by looking at the listed names of 2577 people summoned for jury service over a period of 12 years is not exactly clear.

The defendant called one of the Jury Commissioners as a witness. He said he had been a member six or seven years and identified himself and the other members past and present and said all were white men. He testified a new master jury list had not been prepared in the last four or five years, but some supplemental names had been added from the voter registration list, and some 18 to 20-year-old people were selected and added in September of the preceding year (1972); that the Commission selected names from the Public Utility Board records and the voter registration records; that they used their best judgment in trying to determine "whether or not they are qualified." He explained the small number of women selected by saying it could be due partly to use of the Board of Public Utility records as a source and also because jury service by women was not mandatory and they could elect not to serve. He said that he had never known of a member of the Jury Commission to reject a person for prospective jury duty because he was black, and he could not agree that the small number of black people on the jury list was the result of no black person being a member of the Jury Commission. On cross-examination by the State he testified that the Jury Box contains the names of black people, women—including black women, and "18-year-olds"; and that neither he nor anyone else on the Jury Commission ever rejected anyone because she was a woman—either black or white. It was stipulated that a black man, Clarence Clark, was a member of the grand jury "that indicted these four men" (which included this defendant and Dexter Williams).

Each of the defendant's Assignments complaining about exclusion of blacks and women and the long uninterrupted tenure of the grand jury foreman were raised by the same attorney, and were sufficiently answered and rejected by this Court in the case of *Edna Stubblefield v. State* (appealed from the same trial court) in an unpublished opinion written by Judge Dwyer and filed at Jackson on 30 October 1973, in which the Supreme Court of Tennessee denied certiorari on 21 January 1974.

See also: *Nelson v. State,* 499 S.W.2d 956 (Tenn.Cr.App.1972) concerning grand jury foremen being reappointed and remaining in office.

■ With reference to the defendant's complaint about the paucity of women selected by the Jury Commission, at the time of this indictment on 5 March 1973, TCA §§ 22 101 and 22 108 granting women the option of serving or not when summoned for jury duty, and like statutes were constitutional. *Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). Whatever may be the effect of *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) upon our above-mentioned woman-juror statutes, that decision of the United States Supreme Court is not retroactive and hence has no application in the instant case. *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed. 790 (1975).

■ In contending that persons between the ages of 18 and 20 were systematically excluded, the defendant is confronted with his failure to sustain the initial burden of showing that such persons constitute a separate and distinct class. The defendant in *Shadden v. State,* 488 S.W.2d 54 (Tenn.Cr. App.1972), made a similar insistence. Holding to the contrary, this Court said:

"Furthermore, the defendant offered no evidence to establish, and we are not persuaded, that persons between the ages of 18 and 20 constitute a cognizable distinct class or group in the general population. This record is barren of any evidence and we cannot assume, that the attitudes and propensities and predilections and viewpoints of persons in this age group are peculiar to them and are any different

than, say, those of persons in the age group of 21 25, nor that those in the younger bracket are endowed with any greater capacity for perceptiveness and discernment and impartiality.

"For the purpose of selecting people to serve on juries, the defendant would create a new class in society composed of those over 18 and under 21 years of age. The fallacy of such a concept is immediately apparent in its fearsome implications. It would permit a defendant of any given age to mount an attack upon his indictment upon the ground that people in the county of the same age constituted a legally cognizable class requiring separate constitutional recognition. In devising a method of selecting citizens for jury service it is obviously altogether impracticable to attempt to identify and categorize people by precise age groups such as 18 21, or 21 26, or 45–50, or 60 65. Certainly a defendant has no constitutional complaint that no one of his age was on the Grand Jury which indicted him or on the trial jury which convicted him. In the administration of jury laws, proportional class representation is not a constitutionally required factor. *Hoyt v. State of Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118; *State ex rel. Smith v. Johnson,* 220 Tenn. 49, 413 S.W.2d 694; *State ex rel. Hathaway v. Henderson,* 1 Tenn.Cr.App. 168, 432 S.W.2d 503."

We agree with the opinion of the United States District Judge in *United States v. Gargan,* 314 F.Supp. 414, that in selecting jurors it is impracticable to attempt to identify and to categorize people by age groups, for the patent reason that persons within a specific age group do not constitute a distinct identifiable class in the general population.

See also: *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

We agree with the trial judge that the defendant did not prove any of his charges of systematic exclusion of blacks or women or young people.

Affirmed.

WALKER, P. J., and GALBREATH, J., concur.