IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 3, 2015

**STATE OF TENNESSEE v. ANTONIO CRENSHAW**

**Appeal from the Criminal Court for Shelby County**
**No. 12-005228     Lee V. Coffee, Judge**

**No. W2014-01367-CCA-R3-CD  -  Filed May 22, 2015**

The Defendant-Appellant, Antonio Crenshaw, was convicted by a Shelby County jury of the charged offense of robbery, and the trial court sentenced him as a Range III, persistent offender to fifteen years.  On appeal, Crenshaw argues:  (1) the evidence is insufficient to sustain his conviction; (2) the trial court erred by instructing the jury on the generic offense of theft of property rather than the offense of shoplifting, by providing an incomplete charge for theft of property, and by giving a confusing definition for the term "violence" in the robbery charge in response to a question from the jury; (3) he was deprived of due process and a fair trial when the trial court corrected defense counsel during and after his closing argument, when the trial court ruled against him on a Rule 404(b) issue, and when a witness later testified, over his objection, that employees informed her Crenshaw had been "stealing again" after the incident in this case; and (4) the trial court lacked jurisdiction over his case because the grand jury foreperson on the grand jury indicting him possibly served longer than her two-year term.  Upon review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the Defendant-Appellant, Antonio Crenshaw.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This appeal stems from the robbery of a Roses Department Store in Memphis on February 17, 2012. Crenshaw was identified as one of the perpetrators and was later indicted.

**Trial.** Cyrine Howard testified that on February 17, 2012, she was the store manager of a Roses Department Store in Memphis. On the morning of February 17, 2012, Monica Foster, one of the office managers, informed Howard that a man, later identified as Antonio Crenshaw, had "got[ten] something," which meant that Crenshaw was attempting to steal merchandise. Although Howard did not know Crenshaw's name, she recognized him as a regular customer at the store. Howard said that when she had seen Crenshaw in the store on prior occasions, he was "walking real slow, and he'd just look around. So I thought he was on medication or something." When Howard was asked if she believed Crenshaw was "up to something" on those previous occasions, Howard responded, "No ma'am. I just thought he was sick or something, he was on medication." She added, "He had been in the store lots of times, so I didn't think anything about it. I just thought he was a regular customer."

When Foster informed Howard that Crenshaw was attempting to take some merchandise without paying for it, Howard looked up from the work she was doing. The store's cashier, Mary Blaire, approached Crenshaw, who had a trash can full of clothing, and told him to leave it there. When Howard saw that Crenshaw was not going to leave the items, she ran to the entrance of the store to stop him from leaving the store with the store's merchandise, which included both the trash can and the clothing. As soon as she got there, Howard told Crenshaw to leave the merchandise, and Crenshaw informed her that he was not going to leave it. Howard said that at that point, "[Crenshaw] pushed the trash can up against me, and we went to tussling over the trash can." She added, "I thought [Crenshaw] was going to turn loose and hit me, but he didn't." Howard said she believed Crenshaw was going to hit her when he attempted to exit the store's second door to the outside.

Crenshaw refused to release the trash can and informed Howard that he was going to keep the trash can and its contents. During the struggle over the trash can, Foster approached them, and Howard asked her if she was going to help her. Howard said she was unable to hold her grip on the trash can because Crenshaw was relentlessly pulling on it. Finally, Crenshaw snatched the trash can from Howard, ran out of the store, and threw the trash can and its contents into the back seat of a black Chrysler 300 that was waiting nearby. Crenshaw jumped inside the passenger seat of the car, which immediately drove away from the scene. Howard identified Crenshaw at trial as the man who had taken the merchandise from the store on February 17, 2012. A surveillance

videotape, which depicted Crenshaw during the incident on February 17, 2012, was shown to the jury.[1]

Howard later identified Crenshaw from a police photographic lineup. Several days after Howard identified Crenshaw in this lineup, Crenshaw approached Howard at the store, told her his name was Tony, and asked her not to press charges against him. Because Howard was frightened that Crenshaw might hurt her, she began talking to him about turning his life around. A few days later, Howard told the prosecutor about Crenshaw returning to the store and about the details of their conversation.

Near the end of Howard's testimony, the trial court relayed the following question to Howard from a juror: "What made you feel as though Antonio Crenshaw was going to hit you?" Howard replied, "He said he wasn't going to let [the trash can with the merchandise] go when I asked him to leave it. And as me being a woman and him being a male, I assumed he would try to hit me. But he didn't."

Monica Foster testified that on February 17, 2012, she was working at the Roses Department Store in Memphis when she observed Crenshaw pulling a garbage can full of merchandise. She told Howard that Crenshaw "ha[d] something," and Blaire, the cashier, told Crenshaw to stop, although he continued with the merchandise to the front of the store. Howard approached Crenshaw, and Foster followed behind. Foster said Howard told Crenshaw to drop the garbage can, and he refused. At that point, Crenshaw and Howard began fighting over the garbage can. Foster said that she was unable to grab onto the garbage can because of the way they were fighting over it.

When asked if she thought Crenshaw was going to hurt Howard, Foster replied, "The way I was looking—I was like—I didn't know what [Crenshaw] was going to do, but he was determined to get the garbage can." When asked if she was afraid or was watching what was happening, she said, "Well, I [was] watching. I was hoping he wasn't going to do anything to her, you know." Foster said that during the altercation, nearly six hundred dollars of clothing fell out of the garbage can. Despite this, Foster said the garbage can was still nearly full of merchandise when Crenshaw exited the store with it. After Crenshaw fled with the merchandise, Foster notified the police that Crenshaw had dropped his hat and a business card during the incident.

Nancy Trentham, an officer with the Memphis Police Department, testified that she collected a black hat and a business card with Officer Croom's name on it from the Roses Department Store when she investigated this case on February 17, 2012. She later

---

[1] No trial exhibits, including the store's surveillance videotape, were included in the record on appeal.

contacted Officer Croom to notify him that his business card was found at the crime scene.

Joshua Croom, an officer with Organized Crime Unit of the Memphis Police Department, testified that he first met Crenshaw during a traffic stop just prior to midnight on February 16, 2012. During this stop, Crenshaw told Officer Croom that he needed a job to make some money, and Officer Croom made him an offer to work as a confidential informant for his unit and gave him his business card. Officer Croom identified the card collected by Officer Trentham as one of his business cards. When he gave Crenshaw his business card, he wrote down Crenshaw's name and date of birth. A few hours later, he received a call from Officer Trentham that his business card had been found at the scene of a robbery. Officer Croom later reviewed a surveillance videotape from the Roses Department Store and identified Crenshaw as the man in the videotape and as the man to whom he gave his card during the traffic stop. He noted that Crenshaw was wearing the same clothes in the videotape as he had been wearing during the traffic stop.

Dexter Moses, a lieutenant with the Memphis Police Department, testified that in February 2012 he worked in the Robbery Bureau. When he learned that Officer Croom's business card had been found at the scene of a robbery at the Roses Department Store on February 17, 2012, he contacted Officer Croom to see if he had recently talked to someone about being a confidential informant. He then asked Officer Croom to look at the surveillance videotape from the robbery. Based on Officer Croom's information, Lieutenant Moses compiled a photographic lineup, which he presented to Howard. He stated that Howard immediately identified Antonio Crenshaw in the lineup and that he later issued an arrest warrant for Crenshaw.

## ANALYSIS

**I. Sufficiency of the Evidence.** Crenshaw argues that the evidence is insufficient to support his robbery conviction. Specifically, he claims that the theft was complete prior to the use of any violence or fear and that it was only after Howard attempted to retrieve the merchandise that a physical altercation with her occurred. Because the record shows that Crenshaw used violence and placed Howard in fear in order to take the property in this case, we conclude the proof is sufficient to sustain the conviction for robbery.

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (Supp. 2011). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103(a) (Supp. 2011). "Owner" is "a person, other than the defendant, who has possession of or any interest . . . in property . . . and without whose consent the defendant has no authority to exert control over the property." T.C.A. § 39-11-106(a)(26) (Supp. 2011). "Possession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). Actual possession "refers to physical control over an item." State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise

dominion and control over [an object] either directly or through others.'" Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)).

"The use of violence or fear elevates theft to robbery." State v. Swift, 308 S.W.3d 827, 830 (Tenn. 2010) (citing State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001)). "'If an individual uses violence or puts another in fear to obtain or exercise control over another's property, he or she has committed a robbery." Id. (quoting State v. Owens, 20 S.W.3d 634, 638 (Tenn. 2000)). Accordingly, "'whether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed.'" Id. (quoting Owens, 20 S.W.3d at 638). The use of violence or fear must precede or be contemporaneous with the taking of property. Id. (citing Owens, 20 S.W.3d at 641).

Crenshaw relies on State v. Swift, 308 S.W.3d 827 (Tenn. 2010), to argue that the theft was complete, prior to any violence or fear, when he made his intent clear to steal the merchandise. Specifically, he asserts that the theft was complete when he placed the merchandise into the trash can or, at the very least, when the following things occurred: when he passed Foster, who told Howard that he had "got[ten] something," when Blaire told him to put the merchandise down, or when Howard told him to leave the items. Crenshaw argues that it was only after all these things occurred that Howard tried to retrieve the items he had taken and the physical altercation occurred.

In Swift, the Tennessee Supreme Court considered "whether the location of the use of violence or fear is relevant in distinguishing theft from robbery." 308 S.W.3d at 828. There, an employee saw the defendant, "who was holding merchandise, put his hands behind televisions located on a display shelf." Id. at 829. When the defendant saw the employee watching him, he "quickly removed his hands, put them into his pants, and walked away." Id. The employee assisted another customer for around two minutes as he continued to watch the defendant. Id. The employee then walked to the shelf where the defendant had been standing and found two empty videogame cases on the shelf. Id. He immediately informed the loss prevention specialist at the front of the store that the defendant had "just stole[n] two games." Id. The loss prevention specialist found the defendant on the store's surveillance cameras, and approximately two minutes later, the defendant walked toward the store's front door. Id. When the loss prevention specialist asked to speak to the defendant, the defendant did not respond. Id. As the loss prevention specialist attempted to restrain the defendant, the defendant swung at him, and the loss prevention specialist and the employee reached for the defendant. Id. When the defendant took a second swing at the loss prevention specialist, both employees saw that the defendant had a knife in his hand. Id. Fearing for their safety, they backed away, and the defendant left the store. Id. The employees followed the defendant to the parking lot

and saw him get in a car and drive away.  Id.  The video games were never found.  Id.  At trial, the defendant was convicted of aggravated robbery.  Id.

On appeal, the State argued that Swift's case was distinguishable from State v. Owens, 20 S.W.3d 634 (Tenn. 2000), because the defendant's "use of violence and fear occurred inside rather than outside the store."  Id. at 831.  The Tennessee Supreme Court disagreed, holding that the location of the use of violence or fear was inconsequential and that "[t]he temporal proximity between the taking of property and the use of violence or fear [was] the sole relevant factor."  Id.  The court held that it was necessary to determine when the taking was complete in order to assess the temporal proximity between the taking and the use of violence or fear.  Id.  Although the State argued that the taking was not complete until the defendant tried to exit the store without paying for the merchandise, the court held that the taking was complete when the defendant "removed the games from their cases and concealed them in his pants, evincing his intent to deprive [the store] of the property."  Id.  In considering the temporal proximity between the defendant's taking of the games and the use of violence or fear, the court concluded:

> Mr. Swift's use of violence and fear did not precede or occur contemporaneously with the removal and concealment of the games.  Mr. Swift walked toward the exit and swung a knife at the Best Buy employees several minutes after the taking was complete.  We therefore hold that the evidence is insufficient to support Mr. Swift's conviction for aggravated robbery.

Id.  Because the evidence was sufficient to sustain a conviction for aggravated assault, a lesser-included offense of aggravated robbery, the Tennessee Supreme Court vacated the defendant's conviction for aggravated robbery and modified it to aggravated assault.  Id. at 831-32.

We conclude that Swift is distinguishable from the instant case and that Crenshaw's case more closely resembles State v. Johnson, 366 S.W.3d 150, 157 (Tenn. Crim. App. 2011), State v. Jonathan Greer, No. W2009-02414-CCA-R3-CD, 2010 WL 4621730 (Tenn. Crim. App. Nov. 12, 2010), and State v. Mario Merritt, No. W2003-02868-CCA-R3-CD, 2004 WL 2726030 (Tenn. Crim. App. Nov. 30, 2004).  In the instant case, Crenshaw had yet to "evinc[e] his intent to deprive [the Roses Department Store] of the property" until he had the physical altercation with Howard.  See Swift, 308 S.W.3d at 831; T.C.A § 39-14-103.  During this altercation, Crenshaw pushed the trash can against Howard, and they began wrestling over the trash can full of clothing. Howard testified that while the confrontation was taking place, she believed that Crenshaw was going to hit her.  Crenshaw was only able to complete the "taking" of the property during this confrontation when he snatched the trash can full of clothing out of

- 7 -

Howard's hands and exited the store. Unlike the defendant in <u>Swift</u>, Crenshaw never concealed the property on his person prior to using violence or fear. Both Howard and Foster testified that the merchandise, which included the trash can and the clothing, was in full view as Crenshaw approached the store's front door. In fact, when Howard and Crenshaw were struggling over the full trash can, approximately half of the clothing spilled onto the floor of the store before Crenshaw escaped with the trash can containing the remaining clothing.

Crenshaw asserts that Howard's belief he was going to hit her "was based solely on the fact that she was a female and [he] was a male" and that "there is nothing in the record that shows . . . [he] was even aware" of Howard's fear. Instead, he claims the testimony from Howard and Foster established that he was more concerned about keeping the merchandise than using violence or fear to take the merchandise. In this case, the jury found that Crenshaw used violence or fear to obtain the property. As we previously noted, the jury determines the inferences to be drawn from the evidence, and this court shall not substitute its inferences for those drawn by the jury. <u>Dorantes</u>, 331 S.W.3d at 379. Viewed in the light most favorable to the State, a rational jury could have found that Crenshaw used both violence and fear to accomplish the theft, therefore elevating the theft to robbery. Because the use of violence and fear occurred contemporaneously with the taking of the property in this case, the evidence is sufficient to sustain Crenshaw's conviction for robbery.

**II. Jury Instruction.** Crenshaw argues that because the theft in this case involved theft of property from a merchant, the trial court should have instructed the jury on the offense of Theft of Property—Conduct Involving Merchandise (also known as Shoplifting) in Tennessee Code Annotated section 39-14-146 rather than the generic Theft of Property offense in Tennessee Code Annotated section 39-14-103. He also claims that even if the trial court instructed the jury as to the correct theft offense, the trial court erred in omitting the words "or exercised control" when it charged the jury on Theft of Property in Code section 39-14-103 in its final jury instructions. Finally, Crenshaw claims the trial court's definition of "violence" in response to a question from a juror was incorrect or misleading. We conclude that Crenshaw is not entitled to relief.

**A. Instruction on Shoplifting Offense.** Crenshaw contends that the trial court should have instructed the jury on the offense of shoplifting in Code section 39-14-146 rather than the generic theft of property offense in Code section 39-14-103. He argues that instructing the jury on shoplifting "would have removed the confusion that existed as it related to 'owner' [and would have] made it clear when the [t]heft was completed[.]"

As we previously noted, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the

property without the owner's effective consent." T.C.A. § 39-14-103(a). On the other hand, the offense of shoplifting is defined as follows:

> (a) For purposes of § 39-14-103, a person commits theft of property if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly commits any of the following acts:
> (1) Conceals the merchandise;
> (2) Removes, takes possession of, or causes the removal of merchandise;
> (3) Alters, transfers or removes any price marking, or any other marking which aids in determining value affixed to the merchandise;
> (4) Transfers the merchandise from one (1) container to another; or
> (5) Causes the cash register or other sales recording device to reflect less than the merchant's stated price for the merchandise.
> (b) In a theft prosecution under this section, unless applicable, the state is not required to prove that the defendant obtained or exercised control over the merchandise as required in a prosecution under § 39-14-103.

Id. § 39-14-146 (Supp. 2011).

The right to trial by jury is guaranteed by the United States and Tennessee Constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 6. It follows that a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions. Dorantes, 331 S.W.3d at 390 (citing State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005); State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001); State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000)). This constitutional right to a trial by jury is violated when the jury is not allowed to consider all offenses supported by the proof. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). If the jury is prevented from considering the pertinent lesser-included offenses, there is a risk that the jury will be forced "into an 'all or nothing' decision that, unfortunately, is likely to be resolved against the defendant, who is clearly guilty of 'something.'" State v. Burns, 6 S.W.3d 453, 466 (Tenn. 1999). However, "'[t]his does not mean . . . that an instruction must be given simply because an offense is a lesser-included offense of another.'" Bryant v. State, No. M2012-01560-SC-R11-PC, — S.W.3d —, 2015 WL 1137755, at *6 (Tenn. Mar. 13, 2015) (citing State v. Dellinger, 79 S.W.3d 458, 496 (Tenn. 2002)). When, as in this case, a party does not make a written request for an instruction on a lesser-included offense, the trial court may charge the lesser-included offense, although the party is not entitled to such an instruction. Bryant, — S.W.3d —, 2015 WL 1137755, at *6 (citing Fayne, 451 S.W.3d at 371).

We note that theft is a lesser-included offense of robbery. Bowles, 52 S.W.3d at 79 (citing State v. Fitz, 19 S.W.3d 213, 216 (Tenn. 2000)). Pursuant to Tennessee Code

Annotated section 40-18-110(a)-(c) (Supp. 2013), a defendant may not present an issue on appeal regarding the failure to instruct on a lesser-included offense unless he or she requested the instruction in writing prior to trial. Because the record shows that Crenshaw did not make such a request, the issue is waived. Fayne, 451 S.W.3d at 371; State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006); State v. Henry Wayne Russell, No. M2013-00166-CCA-R3-CD, 2014 WL 1704953, at *24 (Tenn. Crim. App. Apr. 29, 2014). Crenshaw has failed to show that a substantial right of the accused was adversely affected or that consideration of the error is necessary to do substantial justice. He is not entitled to plain error relief on this issue.

**B. Incomplete Instruction on Theft of Property.** Crenshaw also asserts that the trial court's theft of property charge pursuant to Code section 39-14-103 was incomplete. In the final jury instructions, the trial court gave the following charge for theft of property, in pertinent part:

> Any person who commits the offense of Theft of Property is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: (1) that the defendant knowingly obtained property owned by Cyrine Howard; and (2) that the defendant did not have the owner's effective consent; and (3) that the defendant intended to deprive the owner of the property.

Crenshaw notes that Code section 39-14-103 defines theft of property as the following: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (emphasis added). He claims, and the record shows, that the words "or exercised control" were omitted from the final jury instructions for the lesser-included offense of theft of property. Crenshaw acknowledges that the omitted language was included in the court's charge for robbery in the instructions; however, he argues that the jury was not properly instructed as to the offense of theft of property because the robbery charge did not use a heading or any other words indicating that it had incorporated the charge for theft of property. He claims that because the jury, from voir dire to deliberations, had difficulty distinguishing between theft and robbery and had trouble understanding how violence elevates a theft to a robbery, the trial court's failure to give a complete definition of theft more probably than not affected the judgment. Although Crenshaw cites State v. Gorman, 628 S.W.2d 739 (Tenn. 1982), for the proposition that it is error for the trial court to violate the requirements of Tennessee Rule of Criminal Procedure 30(c) in failing to submit "every word" of the charge to the jury in written form, we conclude that Gorman is inapplicable

because the record shows that the trial court read from the written instructions when it gave the final instructions to the jury.

When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994); Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). "'An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law.'" Majors, 318 S.W.3d at 864-65 (quoting Faulkner, 154 S.W.3d at 58); see State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531, 544 (Tenn. 1977)). Omissions of an essential element of an offense are subject to harmless error analysis. Garrison, 40 S.W.3d at 434 (Tenn. 2000).

The record shows that although the trial court omitted the above language when it instructed the jury on the theft of property offense, it included the omitted language when it instructed the jury on the offense of robbery in the final jury instructions. The trial court's instruction on robbery substantially complied with Tennessee Pattern Jury Instruction 9.01, which includes the definition for theft of property. See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.─Crim. 9.01. Moreover, the evidence established that Crenshaw "obtain[ed]" the property rather than "exercise[d] control of" it when he snatched the trash can full of clothing out of Howard's hands and exited the store. For these reasons, we conclude that the jury charge as a whole fairly submitted the legal issues and contained a proper statement of the applicable law. See Majors, 318 S.W.3d at 864-65. We further conclude that the court's omission of the words "or exercises control" from the instruction on theft of property had no impact on the jury's verdict and was harmless beyond a reasonable doubt. See Garrison, 40 S.W.3d at 435.

**C. Court's Definition of "Violence."** Finally, Crenshaw argues that the trial court's definition of "violence" in response to a jury question was incorrect, or, at the very least, confusing. After deliberations had begun, the jury submitted the following question: "Does the 'so as to' mean intentional in the definition of violence?" The court gave the following response:

> Again, "violence" . . . means evidence of physical force unlawfully exercised so as to damage, injure, or abuse, and physical contact is not required to prove violence. The "so as to" would indicate—and, again,

- 11 -

there does not have to be physical contact in order for you to find that violence was used towards the victim in the taking of this property.

"So as to" is one of those legal terms that I wish we would define better, but it is indicating that, if you find that property was taken unlawfully and violence was used in the taking of this property, the violence is so as to damage, injure or abuse [and] does not require any actual damage, injury or abuse, but "so as to" is that language that means that it could have, violence that was used, that it could have caused damage, injury or abuse, because, again, physical contact is not required in order to prove violence.

Once the jury had retired to continue to deliberate, defense counsel objected to the court's response to the jury's question, stating:

I didn't want to have that be perceived as any type of disrespect while they were in here, but I don't believe that "so as to" means "it could have." I believe it did mean more of an intention, and I would object to the definition of telling the jurors that "so as to" meant "could have."

The trial court noted the objection, stating, "[T]he State . . . does not have to prove that the victim in this case was actually damaged, injured or abused in order for them to find violence, because, again, physical contact is not required to prove violence." Defense counsel added, "[M]y understanding of the law is that 'so as to' means the conduct was intentional, even if there is no actual damage." The trial court replied that it believed it told the jury that information, and if it did not, the record would reflect what it told them.

The trial court has the authority to respond to questions from the jury with a supplemental instruction. State v. Bowers, 77 S.W.3d 776, 790 (Tenn. Crim. App. 2001) (citing Forbes, 918 S.W.2d at 451). The "appropriate course of action" for the trial court in responding to a question from the jury is "to bring the jurors back into open court [and] read the supplemental instruction . . . along with a supplemental instruction emphasizing that the jury should not place undue emphasis on the supplemental instructions . . . ." Id. at 791. The failure to follow the proper procedure is subject to harmless error analysis and reversal is not required if the defendant has not been prejudiced. State v. Tune, 872 S.W.2d 922, 929 (Tenn. Crim. App. 1993). When a trial court repeats instructions or gives supplemental instructions, the instructions must be:

(1) appropriately indicated by questions or statements from jurors, or from the circumstances surrounding the deliberative and decisional process, (2) comprehensively fair to all parties, and (3) not unduly emphatic upon

certain portions of the law to the exclusion of other parts equally applicable
to the area of jury misunderstanding or confusion.

Berry v. Conover, 673 S.W.2d 541, 545 (Tenn. Ct. App. 1984).

We conclude that the court's response merely restated a portion of the final jury instructions and attempted to provide a definition for the phrase "so as to" in the definition for violence. See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.─Crim. 9.01. The response was limited to the juror's question, did not show any partiality or bias toward either party, and did not emphasize certain parts of the law to the exclusion of other parts of the law also applicable to the question. See Berry, 673 S.W.2d at 545. While the trial court's supplemental instruction should have admonished the jury not to place undue emphasis upon the supplemental instruction, the final jury instructions informed the jury that "[t]he order in which these instructions are given is no indication of their relative importance" and that it "should not single out any one or more of them to the exclusion of another or others but should consider each instruction in light of and in harmony with all the others." See Forbes, 918 S.W.2d at 452 (citing State v. Chance, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989)); see Burton v. State, 394 S.W.2d 873, 876-77 (Tenn. 1965). Although Crenshaw suggests that the trial court's response allowed the jury to find violence based on his unintentional acts, there was overwhelming proof presented at trial that Crenshaw used violence or fear to take the property in this case. Because Crenshaw was not prejudiced by the trial court's response, he is not entitled to relief. Tune, 872 S.W.2d at 929.

**III.** **Due Process and Right to a Fair Trial Violation**. Crenshaw argues he was deprived of due process and a fair trial when the trial court corrected defense counsel as to the definition of "owner" during and after his closing argument, when the trial court ruled against him on a Rule 404(b) issue, and when Howard later testified, over his objection, that employees informed her Crenshaw had been "stealing again" after the incident in this case. We conclude that Crenshaw is not entitled to relief.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and the "Law of the Land" Clause of Article I, section 8 of the Tennessee Constitution afford all criminal defendants the right to a fair trial. A fair trial is a basic tenet of due process. Leighton v. Henderson, 414 S.W.2d 419, 421-22 (Tenn. 1967); In re Cameron, 151 S.W. 64, 76 (Tenn. 1912).

**A. Closing Argument.** First, Crenshaw argues that his rights to due process and a fair trial were violated when the trial court corrected defense counsel regarding the definition of "owner" during and after his closing argument, which had the effect of suggesting to the jury that the State was not required to prove every element of the

offense beyond a reasonable doubt. He asserts that the trial court's actions violated Tennessee Rule of Criminal Procedure 30(d)(2), gave the jury the impression that the court was biased in favor of the State, and sent the jury a message that it should not trust defense counsel. We conclude that Crenshaw is not entitled to relief because the trial court's instruction was proper, did not remove the State's burden of proving every element of the charged offense of robbery beyond a reasonable doubt, and did not show any bias in favor of the State.

During closing argument, defense counsel made the following argument regarding the definition of "owner" in the court's robbery charge:

> [T]his was a crime against Roses Department Store, it is an alleged crime, and the first thing we look at in the definition of "robbery" is that they have to exercise control over the property owned by Ms. Howard. I will allow you to look through these jury instructions and allow you to use your notes and recall anything on the stand to get to the basic elements.
>
> . . . I'm here to see did they reach the level of law beyond all reasonable doubt and then apply it to this case. Look at the definition of "owner."

Immediately, the State asked to approach, and during the ensuing bench conference, the State asked that the trial court read the definition of "owner" to the jury because defense counsel was suggesting that "owner" was "something other than what is in the instruction" on robbery.

At the conclusion of the bench conference, the trial court gave the following curative instruction to the jury in open court:

> Ladies and gentlemen of the jury, again, I don't comment on the facts, don't comment on credibility. "Owner," when you look at the definition of "owner" on page 4 of the jury instructions, it will tell you that "owner" means a person other than the Defendant who has possession of or any interest in property.
>
> The State of Tennessee does not have to prove that Ms. Howard owned this property, that she worked at Roses; they have to prove that she had possession of the property. They do not have to prove that she's a legal owner of the property. "Owner" is any person other than the Defendant who has possession of that property.

- 14 -

When defense counsel continued his closing argument, he stated the following, in pertinent part:

Thank you. When you use your jury instructions and we look it over, as I was still saying, we look at the definition of "owner"—and thank you for clarifying the definition of "owner"—as I suggested you do was look at the facts and see if Ms. Howard, based on what she said and based on the evidence, was even the owner or this property. Did she have possession of it? Was she the owner?

What did we hear from her? Did she have it? If she had it, why did it leave the store? Did she have it? Prior, the first person who [saw] this incident, they say it was someone who was over the counter, and then they got her attention, and she tried to run to catch him and he was going out the exit. Did she have possession ever?

Possession. What does "possession" mean? If she had possession, where is the stuff now? So when we look at the definition of "owner" and use our standard of beyond all reasonable doubt, what does that mean? What that means is that, if there's a reasonable doubt that she ever had possession of this property, then she can't be an owner under the law, and the verdict would have to be not guilty.

And it doesn't matter how many times she asked us to repeat the definition, it doesn't matter how many different people said what the definition is, it doesn't matter how many people tell you what the definition is, it doesn't change what the definition is.

I'm not here twisting words or making things up. . . . So if we look at the definition and we use the standard of beyond all reasonable doubt, did we ever hear her say, "At this point, I actually had possession"? Did she say it? I didn't hear her say it.

After defense counsel finished his closing argument but prior to the State presenting its final closing statement, the court, sua sponte, provided the following instruction to the jury:

Thank you, [defense counsel]. Ladies and gentlemen of the jury, it is my obligation to fully charge you as to what the law is. Now, [defense counsel] may have told you some things as to what he thinks the law is, and

- 15 -

that is not what the law is. The law is what I give to you in the jury instructions.

One, I told you that an "owner" is a person other than the defendant who has possession of or any interest in property. [Defense counsel] also told you that the State of Tennessee had to prove that Ms. Howard . . . [had to] actually possess the property in order for you to find the person guilty of that offense. That is not the law. The law is, such possession may be actual or constructive, sole or joint. And that's what I told you on page 4 of the jury instructions.

And "actual possession" is something that somebody has in his or her actual hands. Now, that's what [defense counsel] has told you, in order to be an owner, that Ms. Howard had to have this property in her actual possession. That is not the law. The law is that possession may be actual or constructive. It is "actual" when it is in the possession or the hands of a person. It is "constructive" when it's in the curtilage, in the general immediate area of the person, and the person has the right to exercise control over it. That's included in your definition of "exercise control over property."

And the law would also tell you that possession may be sole or joint. "Sole possession," one person [who] has entire possession over that thing, that is "sole possession." If you have two or three or more other folks that ha[ve] the ability to exercise control over that item, it is "joint possession."

So the State of Tennessee does not have to prove that Ms. Howard actually had this property in her hands in order for you to find that she was, in fact, an owner.

Initially, we agree with the State that Crenshaw has waived this issue by failing to make a contemporaneous objection when the court corrected defense counsel during and after his closing argument. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We also agree that this issue does not rise to the level of plain error. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); Adkisson, 899 S.W.2d at 641-42 (establishing the five factors that should be considered by this court when determining whether an error is "plain error.").

- 16 -

The Tennessee Supreme Court has recognized that "closing argument is a valuable privilege that should not be unduly restricted." State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). Although the courts of this state traditionally have given counsel wide latitude in presenting their position, a trial court's action in controlling the argument of counsel will not be reversed unless the court abused its discretion. State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978) (citing Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975)). Broad discretion is extended to the trial judge in controlling the course and conduct of the trial, but "the trial judge must refrain from expressing 'any thought that might lead the jury to infer that the judge is in favor of or against the defendant in a criminal trial.'" State v. Dotson, 450 S.W.3d 1, 90 (Tenn. 2014) (quoting State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994)) (citing State v. Harris, 839 S.W.2d 54, 66 (Tenn. 1992)). However, any comments made by the trial court during trial must be construed in the context of "all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." State v. Boggs, 932 S.W.2d 467, 472 (Tenn. Crim. App. 1996) (citing Alley v. State, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

We conclude that the trial court was exercising its discretion to control closing argument and to instruct the jury on the correct law applicable to the case. See State v. Gary Jones, No. M2005-00674-CCA-R3-CD, 2006 WL 1868443, at *6 (Tenn. Crim. App. July 6, 2006) (holding that the court's statement that the jury is charged to follow the law in response to defense counsel's suggestion that the drafting of the jury charge had some purpose other than instructing the jury as to the law was proper because the court was exercising its duty to control closing argument). In the first comment that occurred during the defense's closing argument, the court simply reiterated the definition of "owner" in the robbery charge. See Dorantes, 331 S.W.3d at 390 (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990) ("It is the duty of the trial judge without request to give the jury proper instructions as to the law governing the issues raised by the nature of the proceedings and the evidence introduced during trial . . . .")). In the second comment that occurred just after defense counsel's closing argument, the court reiterated the definitions of "owner" and "possession," including actual and constructive possession, as they were stated in the court's charge for robbery. The record shows that the trial court made both comments because it was concerned that defense counsel was confusing the jury as to the proper law to be applied in this case.

Contrary to Crenshaw's claim, the trial court never made any statement that removed the State's burden to prove all the elements of the offense beyond a reasonable doubt. Instead, the trial court repeatedly instructed the jury that the State had the burden of proving every element of the offense beyond a reasonable doubt. As to his claim that the trial court's comments violated Tennessee Rule of Criminal Procedure 30(d)(2), we note that Rule 30(d)(2) merely allows the court the option of giving the final jury

- 17 -

instructions to the jury before or after closing argument and does not preclude a court from giving a supplemental jury instruction during a closing argument. Although Crenshaw claims the trial court's comments gave the jury the impression that the court was biased in favor of the State and sent the jury a message that it should not trust defense counsel, the record shows that the trial court provided these supplemental instructions to clarify the law as to the definition of "owner" and "possession" in the robbery charge and not to bias the jury in favor of the State. Compare State v. David L. Croom, No. 3, 1988 WL 63503, at *3 (Tenn. Crim. App., at Jackson, June 22, 1988) ("Although counsel may summarize the law during closing arguments, the possibility of misstatement of the law makes this an undesirable practice."); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 9.01. The supplemental instructions at issue were prompted by the State's objection and the content of defense counsel's closing argument, were fair to all parties because they were a correct statement of the law, and did not emphasize certain portions of the law to the exclusion of other portions of the law applicable to the issue, especially in light of the charge as a whole. See Berry, 673 S.W.2d at 545; see also Forbes, 918 S.W.2d at 452; Burton, 394 S.W.2d at 876-77. Because Crenshaw has failed to show that a substantial right of the accused was adversely affected or that consideration of the error is necessary to do substantial justice, he is not entitled to plain error relief on this issue.

**B. Crenshaw "Stealing Again."** Crenshaw argues that the trial court erred in ruling, over his objection, that Howard was allowed to testify that she recognized Crenshaw during the incident in this case because she had suspected Crenshaw of stealing from the store on prior occasions. He also argues that Howard's later testimony, that her employees told her that Crenshaw was "stealing again" after the incident in this case, prejudiced his case despite the curative instruction from the court. Crenshaw claims these errors violated his right to due process and his right to a fair trial.

Prior to trial, the State filed a Rule 404(b) notice. At a jury-out hearing just prior to the start of trial, the State argued Howard should be allowed to testify that she recognized Crenshaw because she had suspected him of stealing from the store in the past and because he had appeared to be under the influence of a substance on prior occasions. The State argued that these prior bad acts were admissible because they helped establish Crenshaw's identity at trial. See State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004) (holding that evidence of other crimes, wrongs, or bad acts may be admissible for other purposes, such as motive, intent, guilty knowledge, identity of the defendant, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation). Defense counsel replied that any mention of Howard's suspicions that Crenshaw had stolen from the store before or that he had been under the influence of substances while in the store in the past would be prejudicial, and he asked that Howard's

testimony be limited to the fact that she had simply seen Crenshaw in the store on prior occasions.

The trial court held that evidence that Howard was paying close attention to Crenshaw because she suspected him of stealing in the past was admissible because it was relevant to show identity, intent, and motive and because it "provide[d] contextual background information as to why she paid particular attention to Mr. Crenshaw when he moved about her store." But cf. State v. Gilliland, 22 S.W.3d 266, 272 (Tenn. 2000) (outlining a test for the admissibility of evidence of other crimes, wrongs, or acts that are relevant only to provide contextual background evidence). The court added, "And the probative value of that is not substantially outweighed by the danger of unfair prejudice." The court also held that Howard would be allowed to testify that she recognized Crenshaw because he appeared to be acting strangely during his prior visits to the store as long as she did not mention that he appeared under the influence of drugs.

During the State's proof, Howard testified that she recognized Crenshaw, not because she had suspected him of stealing in the past but because Crenshaw was "walking real slow, and he'd just look around," which made her believe that "he was on medication or something." When Howard was asked if she believed Crenshaw was "up to something" on those prior occasions, Howard responded, "No ma'am. I just thought he was sick or something, he was on medication." She added, "He had been in the store lots of times, so I didn't think anything about it. I just thought he was a regular customer." Later, when the State asked Howard if she had talked to someone about Crenshaw returning to the store to ask her not to press charges against him, Howard replied that she had told the prosecutor about Crenshaw returning to the store and that two days before he returned to the store, her "cash office lady and one of the assistants told [her] that [Crenshaw] had c[o]me in the store stealing again." Defense counsel immediately asked for a bench conference and requested a mistrial, arguing that the court had ruled that Howard was not to testify about Crenshaw's prior incidents of stealing and was only allowed to testify that she suspected him of stealing in the past. Defense counsel also argued that Howard had not personally observed the stealing that occurred after the incident in this case. The trial court replied that Howard's statement about Crenshaw "stealing again" was "an unresponsive answer to a question asked by [the State]." The court implicitly denied the request for a mistrial and stated that it would instruct the jury to disregard Howard's last statement. The trial court then gave the following curative instruction:

> Ladies and gentlemen of the jury, . . . if you heard Ms. Howard make a statement that somebody had told her that Mr. Crenshaw had come back to the store after this conversation in which he asked her to drop charges and someone had told her that he had been back in the store stealing again, if you heard that statement, I'm going to order that you disregard that

statement. It is not being offered for the truth of the matter asserted. There's no evidence that Mr. Crenshaw went back to the store and stole anything after the date for which his case is being tried, and that statement would be a hearsay statement that somebody may have told Ms. Howard, and you cannot consider those out-of-court statements for the truth of the matter asserted.

So if you heard that statement that somebody told . . . Ms. Howard that Mr. Crenshaw had been back in the store stealing again, I'm going to order that you disregard that statement.

Crenshaw claims the trial court erred in ruling that Howard was allowed to testify that she recognized Crenshaw because she had suspected Crenshaw of stealing from the store on prior occasions. However, Howard never actually testified that she suspected Crenshaw of stealing from the store in the past. Instead, she testified that she recognized Crenshaw because he had been in the store in the past, had been walking slowly in the store, and appeared to be on medication. Consequently, even if the trial court's Rule 404(b) ruling was in error, Crenshaw cannot establish prejudice because Howard did not present this evidence at trial. Crenshaw also claims that Howard's later testimony, that her employees informed her Crenshaw was "stealing again" after the incident in this case, prejudiced his case despite the curative instruction from the court. As to this claim, we note that the State never elicited this statement and the proof of Crenshaw's guilt was overwhelming. Moreover, the jury is presumed to follow a court's curative instructions, and we must presume that the jury in this case followed the court's instruction to disregard this statement. See State v. Johnson, 401 S.W.3d 1, 22 (Tenn. 2013); State v. Parker, 350 S.W.3d 883, 897 (Tenn. 2011). For these reasons, we conclude that these two incidents neither deprived Crenshaw of due process nor violated his right to a fair trial.

**IV. Jurisdiction.** Finally, Crenshaw argues the trial court lacked jurisdiction over his case because the grand jury foreperson on the grand jury indicting him may have exceeded her two-year term. Because this court has consistently held that a grand jury foreperson may serve on successive grand juries, Crenshaw is not entitled to relief.

At the post-trial hearing on the defense's Motion to Arrest Judgment pursuant to Tennessee Rule of Criminal Procedure 34, Crenshaw suggested that the trial court did not have jurisdiction over this case because the grand jury foreperson on the grand jury indicting him may have exceeded her term, given that she had served in that capacity as far back as 2009. Defense counsel acknowledged that because of the secretive nature of the grand jury process, he did not know if the grand jury foreperson had exceeded the two-year term. However, he argued that if she had exceeded her term, then Crenshaw

was not properly indicted and the trial court lacked jurisdiction in this matter. Alternatively, defense counsel argued that if this grand jury foreperson had been repeatedly re-appointed, then he was requesting the trial court to make a ruling about whether her reappointment violated the intent of Tennessee Rule of Criminal Procedure 6(g)(3) by removing the two-year term. In denying this motion, the court asserted that grand jury forepersons were often reappointed by the Criminal Court Judges, and it was "not uncommon for those folks to serve eight, ten, twelve, twenty years or so more." The court also noted that in twenty-three years in the county, it was aware of only four individuals who had served as grand jury forepersons.

Tennessee Rule of Criminal Procedure 6(g)(3) states that a grand jury foreperson "shall hold office and exercise powers for a term of two (2) years from appointment" and that "[i]n the discretion of the presiding judge, the foreperson may be removed, relieved, or excused from office for good cause at any time." This court has consistently held that a grand jury foreperson may serve longer than the requisite two-year term. See Teague v. State, 529 S.W.2d 734, 736 (Tenn. Crim. App. 1975) (holding that the long, uninterrupted tenure of a grand jury foreman did not deprive the defendant of due process or equal protection under the law); Nelson v. State, 499 S.W.2d 956, 956 (Tenn. Crim. App. 1972) (finding no authority indicating that a grand jury foreman appointed for two years was disqualified to serve a longer period either by reappointment or holding over); Joseph B. Thompson v. State, No. E2004-00920-CCA-R3-PC, 2005 WL 2546913, at *25 (Tenn. Crim. App. Oct. 12, 2005) (reiterating the rule announced in Nelson); see also David Louis Raybin, Tennessee Criminal Practice & Procedure § 9:8 (2014) (asserting that although a grand jury foreperson's term of office is two years, the grand jury foreperson may be reappointed). Based on this authority, which Crenshaw fails to address in his brief, we conclude that he is not entitled to relief.

## CONCLUSION

In accordance with the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE